UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)  WILLIAM RABE, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  17-CV-511-JHP |
| | ) | (*formerly Creek County District Court* |
| (1)  SUSAN LYNN WATSON, a/k/a SUSAN | ) | *Case No.: CJ-2017-00263*) |
| L. WATSON, a/k/a SUSAN WATSON, | ) | |
| an individual, | ) | |
| (2)  PROGRESSIVE CASUALTY | ) | |
| INSURANCE COMPANY, a/k/a and or | ) | |
| d/b/a PROGRESSIVE INSURANCE | ) | |
| COMPANY, a/k/a and or d/b/a | ) | |
| (3)  PROGRESSIVE GROUP OF | ) | |
| INSURANCE COMPANIES, | ) | |
| (4)  JOHN DOE, a business entity, and | ) | |
| (5)  JANE DOE, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant, Progressive Direct Insurance Company

("Progressive Direct")[1], the real party defendant in interest, hereby removes the above-captioned

action from the District Court of Creek County, State of Oklahoma, to this Court.  Pursuant to LCvR

81.2, a copy of the state court docket sheet as well as all documents filed or served in the state court

action are attached hereto as **EXHIBITS 1-2**.

The removal of this case to federal court is based on the following:

---

[1]Plaintiff's Petition asserts a claim against Progressive Casualty Insurance Company, a/k/a and or d/b/a Progressive Insurance Company, a/k/a and or d/b/a Progressive Group of Insurance Companies ("Progressive Casualty").  However, as discussed below, Plaintiff's automobile insurance policy was not issued by Progressive Casualty Insurance Company.  Rather, the policy was issued by Progressive Direct. Therefore, as the real party in interest, Progressive Direct hereby enters its appearance and removes this matter to this Court.  Progressive Direct further requests that Plaintiff file an Amended Complaint to the correct entity as the defendant in this lawsuit.

## ALLEGED FACTUAL BACKGROUND

1.      Plaintiff, William Rabe ("Plaintiff"), alleges that on September 14, 2015, he was involved in an automobile accident with Defendant Susan Lynn Watson ("Watson"). (*See* Petition, ¶¶ 9-12; 20-21, **EXHIBIT 2**.)

2.      Plaintiff further alleges that at the time of the subject accident, he was insured under a policy of insurance issued by Progressive Casualty.  (*See* Petition, ¶ 36, **EXHIBIT 2**.)

3.      However, Plaintiff was not insured by Progressive Casualty. Plaintiff was insured under a policy issued by Progressive Direct. (*See* Declarations Page, showing Policy No.907014589 is underwritten by Progressive Direct not Progressive Casualty, **EXHIBIT 3**.)

4.      Plaintiff claims that he was injured as a result of the subject accident. (*See* Petition, ¶ 22, **EXHIBIT 2**.)

5.      Plaintiff also claims that at the time of the subject accident, Watson was an underinsured motorist.  (*See* Petition, ¶ 34, **EXHIBIT 2**.)

6.      According to Plaintiff, Progressive Direct, his UM/UIM insurer, breached its contract with him by refusing his demands for payment under the policy.  (*See* Petition, ¶¶ 35-43, **EXHIBIT 2**.)

7.      Plaintiff also claims that Progressive Direct failed to act fairly and good faith toward him.  (*See* Petition, ¶51, **EXHIBIT 2**.)

## PROCEDURAL BACKGROUND

8.      On September 6, 2017, Plaintiff filed the above-styled action in the District Court in and for Creek County, State of Oklahoma.  (*See generally*, Petition, **EXHIBIT 2**.)

9.      Although Plaintiff asserts claims for common law negligence and negligence *pro se* against Watson (*see generally*, Petition, **EXHIBIT 2**), Plaintiff settled his claims against Watson over

a year before this lawsuit was filed.  On May 25, 2016, Plaintiff's counsel informed Progressive

Direct that "[his] client accepted the tortfeasor's policy limit tender" and requested that Progressive

Direct waive its rights of subrogation.  (*See* email correspondence from J. Truskett to Progressive

Direct, dated May 25, 2016, **EXHIBIT 4**.)

10.      On June 6, 2016, Progressive Direct responded to Plaintiff's counsel's request.  And,

based upon Plaintiff's counsel's representation that Plaintiff had accepted the tortfeasor policy limits

offer, Progressive Direct was waiving its right of subrogation. (*See* correspondence from Progressive

Direct to J. Truskett, dated June 6, 2016, **EXHIBIT 5**.)[2]

11.      Plaintiff asserts claims for breach of contract and bad faith against Progressive Direct,

the real defendant in interest.  (*See generally*, Petition, **EXHIBIT 2**.)

12.      Plaintiff's Petition claims damages in excess of the amount required for diversity

jurisdiction.  Specifically, Plaintiff "prays for judgment against Defendant in an amount in excess

of $75,000.00, punitive damages . . . pre-judgment interest, post-judgment interest, attorney's fees,

costs, expenses, any all other relief which this Court deems just and proper."  (*See* Petition, p. 3,

**EXHIBIT 2**.)

13.      On September 11, 2017, Progressive Direct waived its right of service and removed

this action to federal court.

### JURISDICTION

14.      "'Federal courts are courts of limited jurisdiction.  They possess only the power

authorized by the Constitution and statute . . . .'"  *Rasul v. Bush*, 542 U.S. 466 (2004) (quoting

---

[2]Further, counsel for Defendant spoke with the examiner at State Farm who handled Plaintiff's claim. The State Farm examiner confirmed she has a Settlement Agreement signed by Plaintiff releasing Co-Defendant, Susan Watson, from any and all claims related to the subject accident.  Unfortunately, State Farm would not produce the Settlement Agreement without a Subpoena *Duces Tecum*.

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).  For a federal court to have original jurisdiction over a case or controversy, there must exist a federal question or diversity jurisdiction.

15.     At the time the Petition was filed, federal question jurisdiction did not exist. Specifically, there were no allegations that the Constitution or any federal statute had been violated. (*See generally*, Petition, **EXHIBIT 2**.)

16.     However, as shown below, pursuant to 28 U.S.C. § 1332(a)(2), this action is a civil action over which this Court has original jurisdiction.  The real-parties in interest are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

### THE AMOUNT IN CONTROVERSY

17.     The Tenth Circuit has explained "[t]he right of removal depends upon the case disclosed by the pleadings when the petition therefore is filed." *Woerter v. Orr*, 127 F.2d 969 (10th Cir. 1942).  As disclosed by the pleadings, Plaintiff is seeking damages in excess of $75,000.00.

18.     Specifically, Plaintiff "prays for judgment against Defendant in an amount in excess of $75,000.00, punitive damages . . . pre-judgment interest, post-judgment interest, attorney's fees, costs, expenses, any all other relief which this Court deems just and proper." (*See* Petition, p. 3, **EXHIBIT 2**.)

19.     Based on the foregoing, the amount in controversy requirement of § 1332 is met.

### THE CITIZENSHIP OF THE PARTIES

20.     According to Plaintiff's Petition, at the time of filing, he was a resident of the State of Oklahoma.  (*See* Petition, ¶ 1, **EXHIBIT 2**.)  Therefore, upon information and belief, Plaintiff is a citizen of the State of Oklahoma.

21.     Upon information and belief, at the time of filing, Watson was a resident of the State of Oklahoma. (*See* Petition, ¶ 2, **EXHIBIT 2**.) Therefore, Watson is believed to be a citizen of the State of Oklahoma.   However, Plaintiff has settled his claim against Watson. (*See* email correspondence from J. Truskett to Progressive Direct, dated May 25, 2016, **EXHIBIT 4**; correspondence from Progressive Direct to J. Truskett, dated June 6, 2016, **EXHIBIT 5**.) Watson's joinder is fraudulent.  Watson may be disregarded for purposes of diversity jurisdiction.

22.     Plaintiff has also named two "John Doe" defendants.  "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. 1441(b)(1). The Tenth Circuit construed this statute, in *Australian Gold, Inc., et al. v. Hatfield, et al.*, 436 F.3d 1228 (10th Cir. 2006), and held:

> We join these other circuits in holding, consistent with the text of 28 U.S.C. § 1441(a) [now 1441(b)(2)], that the citizenship of "John Doe" defendants should be disregarded when considering the propriety of removal under 28 U.S.C. §§ 1441(a) and 1332."

*Id.* at 1235.

23.     Plaintiff's Petition names Progressive Casualty Insurance Company, a/k/a and or d/b/a Progressive Insurance Company, a/k/a and or d/b/a Progressive Group of Insurance Companies, as the defendant insurer.  However, as shown above, Plaintiff does not have a contractual relationship with Progressive Casualty. (*See* Declarations Page, showing Policy No.907014589 is underwritten by Progressive Direct not Progressive Casualty, **EXHIBIT 3**.) Thus, the Court may properly disregard this entity for purposes of diversity jurisdiction.   Even if not, Progressive Casualty Insurance Company is not incorporated nor does it have its principal place of business in Oklahoma.

24.     Plaintiff's insurance policy was issued by Progressive Direct. (*See* Declarations Page, showing Policy No.907014589 is underwritten by Progressive Direct not Progressive Casualty,

EXHIBIT 3.)  Accordingly, Progressive Direct is the "real party defendant in interest." *See Schwartz*, 2005 WL 3088570, at *4 ("[T]he contracts of insurance unequivocally identify the insurers as Pacific, Great Northern and Transcontinental.  Therefore, it is clear the real parties in interest are Pacific, Great Northern, and Transcontinental[.]"); *Hillberry v. Wal-Mart Stores East, L.P.*, CIV.A.3:05CV-63-H, 2005 WL 1862087, at *2 (W.D. Ky Aug. 3, 2005)("'A real party in interest defendant is one who, by the substantive law, has the duty sought to be enforced or enjoined.'" (quoting *Rose v. Giamatti*, 721 F.Supp. 906 (S.D. Ohio 1989)).

25.     As the United States Court of Appeals, Second Circuit recently explained:

> The real party defendant in interest is not only entitled to remove, but, if it seeks removal, it must act promptly because the 30–day interval in which it is permitted to do so, *see* 28 U.S.C. § 1446(b) (2013), begins when it is "on notice that the wrong company defendant has been named." *Hillberry*, 2005 WL 1862087, at *1; *see Ware v. Wyndham Worldwide Inc.*, Civ. No. 09–6420, 2010 WL 2545168, at *2 (D.N.J. June 18, 2010) (30–day interval started when real defendant accepted service of complaint, although complaint named non-existent entity).
>
> The unstated premise of all of these decisions, with which we fully agree, is that the concept of a "real party defendant in interest" is not only entirely valid, it is an important aspect of removal jurisprudence, despite the absence of the phrase from Rule 17 or elsewhere in the Federal Rules of Civil Procedure.

*La Russon v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 96-97 (2d Cir. 2014).

26.     For purposes of diversity jurisdiction, a corporation shall be deemed a citizen of any State by which it has been incorporated and the State where it has its principal place of business. *See* 28 U.S. 1332(c).  While Congress did not define "principal place of business," the Supreme Court has held that a corporation's principal place of business is presumed to be the place of the corporation's "nerve center."  *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010).

27.     At the time of filing, Progressive Direct, the real defendant in interest, was a foreign corporation, incorporated under the laws of the State of Ohio with "nerve center" or "principal place of business" in Ohio.  (*See* Annual Statement of Progressive Direct, **EXHIBIT 6**.)  Thus, Progressive is deemed to be a citizen of Ohio.  Progressive was not a citizen of the state of Oklahoma.

28.     "[I]n determining the question of diversity we look to the citizenship of the real parties in interest[.]" *Becker v. Angle*, 165 F.2d 140, 142 (10th Cir. 1927); *see also Cunningham v. EHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1244 (10th Cir. 2005); *Charles v. GEICO General Ins. Co.*, 2006 WL 1096599 (D. Alaska); *Hann v. City of Clinton Okl., ex rel. Schuetter*, 131 F.2d 978, 981 (10th Cir. 1942) ("In determining the question whether diversity of citizenship requisite to jurisdiction exists, a court looks to the citizenship of the real parties in interest, and where there is complete diversity between them, the presence of a nominal party with no real interest in the controversy will be disregarded."); *Strotek Corp v. Air Transportation Ass'n of Am.*, 300 F.3d 1129, 1133 (9th Cir. 2002) ("Defendants who are nominal parties with nothing at stake may be disregarded in determining diversity, despite the propriety of their technical joinder.")

29.     Disregarding the fraudulently joined Defendant, Watson, the complete diversity requirement of § 1332 is met.

<u>WATSON'S JOINDER IS FRAUDULENT</u>

30.     As a result of Plaintiff's settlement, Watson can be disregarded as fraudulently joined for the sole purpose of destroying diversity.

31.     Any defendant who has been improperly or fraudulently joined must be ignored for diversity purposes.  *Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967).  Despite the nomenclature, fraudulent joinder "does not reflect on the integrity of the plaintiff or counsel, but exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable

reason for joining the defendant." *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1085 (D. Kan. 2006). The reason for this doctrine is that a plaintiff who joins a non-diverse defendant with the sole purpose of defeating removal is acting unfairly toward the non-diverse defendant, who should not be a party, and to the diverse defendant, whose statutory right is unjustly prohibited. *Wilson v. Republic Iron & Steel*, 257 U.S. 92, 98, 42 S. Ct. 35, 37-38, 66 L. Ed. 144 (1921).

32. As the removing party, a defendant bears the burden of establishing that jurisdiction is proper. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001). Assuming that the requisite amount in controversy can be satisfied, a removing defendant does not have to show that the plaintiff committed outright "fraud" in pleading the jurisdictional facts. Rather, the removing defendant can simply show that there is no real possibility of recovery against the non-diverse defendant. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 & n. 3 (5th Cir. 1992).

33. In *Slover v. The Equitable Variable Life Ins. Co.*, 443 F.Supp.2d 1272 (N.D.Okla. 2006), the Court discussed the protocol for situations in which a defendant believes that non-diverse co-defendants have been improperly joined:

> Because Defendants have alleged fraudulent joinder, the Court may pierce the pleadings. *Hale v. MasterSoft Int'l Pty. Ltd.*, 93 F.Supp.2d 1108, 1113 (D.Colo. 2000). Thus, the Court may consider certain underlying facts--such as the insurance policy at issue here--to determine whether the non-diverse parties are proper. *Smoot v. Chi., Rock Island & Pac. R.R.*, 378 F.2d 879, 882 (10th Cir.1967) ("[U]pon specific allegations of fraudulent joiner the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.") (Internal citations omitted). The standard, however, is stringent, and the Court must resolve any ambiguities in Plaintiffs' favor. *Martin*, 251 F.3d at 1289-90 ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.") (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)).

*Id.* at 1276. The Court went on to say:

"If outright fraud in the pleading of jurisdictional facts cannot be proven, ***the question becomes more closely akin to that of whether the plaintiff has properly stated a claim upon which relief may be granted*** under Fed.R.Civ.P. 12(b)(6).  *See Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F.Supp. 1399, 1404 (D.Colo. 1989); *Fine v. Braniff Airways, Inc.*, 302 F.Supp. 496, 497 (W.D.Okla. 1969).

*Id.* at 1278 -1279 (emphasis added).  The *Slover* court concluded by making the succinct but meaningful observation that, "if the plaintiff clearly cannot maintain a state law claim against the non-diverse defendant . . . such defendant shall be considered fraudulently joined." *Id*. at 1279.

34.     Settlement agreements are contracts.  *See Russell v. Bd of Cnty Comm'rs*, 1 P.3d 442, 443 (Okla. Ct. App. 2000); *Rader v. Farmers Insurance Co., Inc.*, 934 P.2d 332, 334 (Okla. 1997); *Corbett v. Combined Commc'n Corp. of Okla., Inc.*, 654 P.2d 616, 617 (Okla. 1982).  Oklahoma law defines a contract as an "agreement to do or not to do something."  15 O.S. § 1.

35.     Settlement agreements may be written or oral.  *Russell*, 1 P.3d at 443 (citing 15A Am. Jur.2d Compromise and Settlement, § 10); *see also E. Cent Okla. Elec. Co-op., Inc. v. Okla. Gas & Elec. Co.*, 505 P.2d 1324, 1328 (Okla. 1973); *Mid-Continent Petroleum Corp. v. Russell*, 173 F.2d 620, 622 (10th Cir. 1949); *Vela v. Hope Lumber Supply Co.*, 966 P.2d 1196 (Okla. Ct. App. 1995). A verbal settlement agreement contains the implied promise to sign a written agreement.  *Coulter v. Carewell Corp.*, 21 P.3d 1078, 1083 (Okla. Ct. App. 2001); *see also Harris v. Ray Johnson Const. Co., Inc.*, 534 S.E.2d 653, 655 (N.C. Ct. App. 2000) (finding the attorney's acceptance "necessarily contained the implied promise to execute some instrument terminating the controversy as to that settling defendant, namely, the stipulation to dismiss the case with prejudice and release of claims form").

36.     Parties can be bound to an agreement reached by their attorneys when the attorney has authority as an agent of his principal-client to enter into settlement agreements on behalf of the client. *Ginner & Miller Pub. Co. v. N.S. Sherman Machine & Iron Works*, 220 P. 650 (Okla. 1923);

*Boyd v. Larko-Industrial Painting Corp.*, 356 F.Supp. 917, 923 (W.D. Ark. 1973); *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104, 105-06 (Alaska 1977); *Sheffield Poly-Glaze, Inc. v. Humboldt Glass Co.*, 356 N.E.2d 837, 840 (Ill. App. 1976). Moreover, once an offer is accepted, the offer may not be revoked. Restatements (Second) of Contracts § 42 cmt. c (1981) (stating "[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such."); *see also Conference Am., Inc. v. Conexant Sys., Inc.*, 508 F.Supp.2d 1005, 108 (M.D. Ala. 2007) ("Except in a small minority of jurisdictions with contrary statutes, 'it is universally settled that a revocation requires communication and that, therefore, an acceptance made prior to a communicated revocation will create a binding contract.'" (quoting Richard A. Lord, *Williston on Contracts* § 5:9)); *Woods ex rel. Woods v. Cory*, 192 S.W.3d 450, 459 ("To be effective, revocation of an offer must be communicated to the offeree before he has accepted.").

37.     In *Turley*, *supra*, a situation similar to the present matter was presented to this Court. In that case, the plaintiff was involved in an automobile accident. The plaintiff filed suit against the tortfeasor and his insurer. The parties eventually mediated the matter, which resulted in a settlement agreement between the plaintiff and the tortfeasor. However, the plaintiff refused to sign the settlement agreement or file a dismissal until he finalized negotiations with medicare. Approximately four months after the mediation was completed, the insurer removed the case to federal court asserting the tortfeasor's presence was attributable to fraudulent joinder, and therefore, the tortfeasor could be disregarded for purposes of diversity jurisdiction.

38.     The Court agreed with the insurer. But, ultimately, remanded the case concluding the insurer's removal was untimely. In doing so, the court reasoned:

> Under Oklahoma law, a "settlement agreement is a contract between the parties and it will be enforced absent fraud, duress, undue influence, or mistake." *Coulter v. Carewell Corp. of Okla.*, 21 P.3d 1078, 1082 (Okla.Civ.App.2001); see also Ray, 2009 WL 2175971,

at * 4 (under Oklahoma law, "court approval is not required for normal settlement agreements to become final and enforceable"). Thus, "[i]n the construction of settlement agreements, the Oklahoma Supreme Court has held [that] [i]f the language of a contract is clear and without ambiguity, the court is to interpret it as a matter of law. In the absence of fraud or mistake, an executed agreement of settlement is as conclusive against a party seeking to avoid it as the final judgment of a court of competent jurisdiction." *Vela v. Hope Lumber & Supply Co.*, 966 P.2d 1196, 1198 (Okla.Civ.App.1998)(internal quotations omitted). The rules governing settlement agreements apply equally to mediation agreements. *Id.* The existence of a contract is a question of fact, and the "sine qua non of a binding contract" in Oklahoma is agreement on all material terms. *GET, LLC v. City of Blackwell*, No. 10–6068, 2011 WL 103033, at * 1 (10th Cir.2011). Although Stilwell has not yet fulfilled the terms of payment stipulated under the contract, full performance is not required under Oklahoma law before a mediation agreement becomes enforceable. *E.g., Vela*, 966 P.2d at 1197–99 (enforcing mediation agreement in the face of plaintiff's refusal to comply with certain terms of the agreement).

*Id.* at *7.

39. The Court continued:

Here, the mediation agreement appears to set forth all material terms of Turley and United's release of claims as to Stilwell. As neither party has made a showing of fraud, duress, undue influence, or mistake, the mediation agreement is an enforceable contract under Oklahoma law. Thus, if the need to enforce the mediation agreement arises, means to do so exist outside the current litigation. *See Hanahan*, 518 F.Supp.2d at 786. Therefore, after the signing of the mediation agreement, Stilwell was no longer a party in interest to the litigation. Upon the elimination of Stilwell as a party in interest, the case became removable on the basis of diversity jurisdiction, and the thirty-day removal period began to run from the date that the mediation agreement was signed.

*Id.* at *8.

40. Finally, although the Court did not consider the insurer's fraudulent joinder argument in its ruling, it stated, in a footnote, that:

In support of its claim, United cites *Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879 (10th Cir.1967), for the proposition that the

11

"continued joinder" of a party is fraudulent where it "serves only to frustrate federal jurisdiction." Dkt. # 2, at 6. In *Smoot*, the Tenth Circuit noted with approval the district court's refusal to remand a case for lack of complete diversity where the non-liability of the remaining nondiverse party had been "conclusively established," and his "continued joinder" was therefore fraudulent. 378 F.2d at 882. Smoot supports the holding herein that this case was removable as soon as the nondiverse party's status was conclusively established by the mediation agreement.

*Id.* at *9 n. 7.

41.     As in *Turley*, Plaintiff has accepted Watson's offer to settle Plaintiff's claims against him for the policy limits of his liability coverage.  (*See* email correspondence from J. Truskett to Progressive Direct, dated May 25, 2016, **EXHIBIT 4**; correspondence from Progressive Direct to J. Truskett, dated June 6, 2016, **EXHIBIT 5**.)   Upon information and belief, Plaintiff executed a settlement agreement releasing his claims against Watson before the filing of this lawsuit.  Therefore, as in *Turley*, the court should conclude that as a result of Plaintiff's acceptance of Watson's settlement offer, Watson's joinder only serves to frustrate federal jurisdiction and is therefore, fraudulent.[3]

## PROGRESSIVE'S REMOVAL IS TIMELY AND PROPER

42.     Pursuant to 28 U.S.C. § 1446(b), this Notice is timely filed with this Court. As Plaintiff has not served Progressive Direct with this lawsuit, the thirty day removal window began to run on September 11, 2017, when Progressive Direct waived its right to service. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend . . . . Unless

---

[3]Indeed, Progressive Direct submits that Plaintiff's counsel's inclusion of Watson as a defendant in this lawsuit may constitute a violation of Rule 11.

a named defendant agrees to waive service, the summons continues to function as the *sine qua non*

directing an individual or entity to participate in a civil action or forgo procedural or substantive

rights.")

43.     Additionally, one year has not elapsed since the commencement of this action.  (*See*

*generally,* Petition, **EXHIBIT 2**.)

44.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal

will be served on counsel for Plaintiff, the adverse party.  Additionally, a copy of this Notice will be

filed with the Clerk of the District Court in and for Creek County, State of Oklahoma.

45.     Title 28 U.S.C. § 1446(a) states that the defendant shall file the Notice of Removal

in "[t]he District Court of the United States for the district and division within which such action is

pending."  28 U.S.C. § 1446(a).  The Northern District of Oklahoma includes the District Court in

and for Creek County, State of Oklahoma.  28 U.S.C. 116(c).  Therefore, the removal to this Court

is proper.

46.     Next, the diversity statutes require that none of the parties served as defendants be

citizens of the State in which the action is brought.  *See* 28 U.S.C. § 1441(b)*.* Progressive Direct is

not a citizen of Oklahoma, the State in which this action was brought.  Although Watson is believed

to be a citizen of the State of Oklahoma, she has been fraudulently joined.  Thus, Watson may be

disregarded for purposes of diversity jurisdiction. *See Becker*, 165 F.2d at 142.  This requirement is

met.

47.     Finally, § 1446 generally requires that all defendants in multi-defendant cases join

in the petition for removal or consent to such action.  There are, however, exceptions to this rule.

*See McCurtain Cnty. Prod. Corp. v. Cowett*, 482 F.Supp. 809, 812 (E.D. Okla. 1978).   "An

improperly joined party is not required to join in the removal petition."  *Id.* at 813; *see also Sycamore*

*Family LLC v. Earthgrains Bakery Companies, Inc.*, No. 2:13-CV-00639-EN, 2013 WL 5883868, at *2 & n. 21 (D. Utah Nov. 1, 2013) (collecting cases).

WHEREFORE, Progressive Direct Insurance Company, the real defendant in interest, removes this action from the District Court in and for Creek County, State of Oklahoma, to the United States District Court for the Northern District of Oklahoma.

Respectfully submitted,

s/ Brad L. Roberson
Brad L. Roberson, OBA No. 18819
Erin J. Rooney, OBA No. 31207
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:      405-606-3333
Facsimile:      405-606-3334
Email:          brad@pclaw.org
                erin@pclaw.org
ATTORNEYS FOR REAL PARTY DEFENDANT IN INTEREST, PROGRESSIVE DIRECT INSURANCE COMPANY

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 11, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

      Ryan S. Wiehl, Esquire
      John Paul Truskett, Esquire
      Samuel T. Perrine, Esquire

I hereby certify that on September 11, 2017, I served the same document by U.S. Postal Service on the following who is not a registered participant of the ECF system:

      Amanda Vanorsdol, Court Clerk        ***VIA U.S. MAIL***
      Creek County Courthouse
      222 East Dewey Avenue, Suite 201
      Sapulpa, Oklahoma  74066

                              s/ Brad L. Roberson
                              For the Firm